Next case for argument, Alaura v. Colvin, Mr. Forbes. Your honors, may it please the court, my name is Randall Forbes, I represent the appellant Kyle Alaura. I think our strongest argument is the controlling weight doctrine. The appellant's specialist's opinions were entitled to controlling weight as to whether he was capable of work function. The ALJ seemed to think that because a work restriction is issued proximate to an injury, that therefore it has some kind of, that it is entitled to less weight, and the government argues that perhaps it expires. So my point is this, in neurological injuries improvement is uncertain until time passes. The doctors do their best to undo the damage and stabilize the patient, but the human brain is a very complicated instrument and it takes time. And often what happens, and it did here, is when the neurological team is done, they say come back, and what really is needed is a referral so that regular therapy and psychiatric oversight is done. Now what's not done here? When was the last time he was examined by a neurologist? Um, in this case or ever? What do you mean in this case or ever? Well, I mean he's got a subsequent application. He's under the constant care of a neurologist, but in this case, he was, the last time he saw a neurologist was shortly before the hearing. What makes this case problematic... Sometime in the first half of 2012, your honor. And who is this neurologist? That would have been John Collins at Neuro Northeast, mentioned page 12. Collins? John Collins. So did he testify? At the hearing? No, I mean he issued medical records and opinions. Did the administrative law judge discuss that? Um, I don't believe so, but I couldn't tell you for certain without reviewing that issue. Are you relying on Dr., is it, uh, Kochman's? Dr. Kochman issued several, um, several off work or no return to work restrictions. Is it correct that those were through March of 2011? Um, I believe one of them was, but then one was left open depending on whether the, what the neuropsych, excuse me, the neuropsychologist determined. And the neuropsychologist... So was December 2011 the last time that Kochman, whatever his name is, saw him? I believe, I believe that's correct, although the neuropsychologist weighed in several months later. And what did the neuropsychologist say about his return to work? He was hopeful that it might happen in a year, but, and then he suggested he go to voc rehab to see what was there. So he punted, he, and I'm sorry, your honors, but this, this situation, um, upsets me because people who are brain injured like this should not just be continuing care. And, um, uh, so the, um, the initial limitations were not rescinded. Um, I would argue that the initial limitation was... But what bothers me about the case is simply that we don't seem to have a current neurological assessment of him or current as of the date of the hearing for the administrative law judge. The, um, Social Security Administration will order up what's called mental status examinations. However, what is called for is another round of neuropsychological testing, and I don't think I've ever seen the Social Security Administration order up that type of testing. I mean, the administrative law judge could have, uh, had a neurologist examine him at the time of the hearing, right? That could have happened, yes. But did... Um, not to my knowledge, your honor. Um, so, I mean, this... Are you inferring it's a cost to them? Well, you're asking the wrong guy. I'm kind of cynical. I think a lot of things that happen in government are cost-based as to whether specifically or there was an intent. I don't know. Yeah. I don't know the intent of the Social Security on that. I would suspect it's cost-based. If I could switch gears to the daily activities issue, your honor. The mother's testimony on what this young man can do is very similar to Bjornsson and also quite illuminating, and I would ask you to consider that also. As to my second issue in regards to the hypotheticals, I've studied the government's argument on the train again, and I believe that they've got most of it correct, except that sedentary work is not necessarily lesser included of light work because there are some people that can walk and stand but just can't sit. I'm not sure it's applicable here, though. So, um, anyways, I'd like to reserve the rest of my time unless you have questions. Okay, that's fine. Thank you, Mr. Forbes. Ms. Bence. Good morning, your honors. My name is Julie Bence, representing the Social Security Administration. A few comments regarding the neurological examinations and Dr. Kochman's opinions. First of all, the ALJ had a neurological examination from Dr. Collins less than a month before the hearing. She had his notes, he had examined him. What did she say about Collins in her opinion? She mentions the fact that he saw him, that he performed a neurological examination, that he ordered an EG, which was normal, that he performed trigger point injections and nerve blocks, which ALJ reported completely alleviated his headaches, and his treatment notes said that he believed the injections and nerve blocks were working well to control his headaches and that he had no side effects from his medications. How frequently does he have to take these nerve blocks? The testimony from the nerve blocks relating back to March of 2011, which is approximately a year before, and ALJ's statements to Dr. Collins was that the nerve blocks lasted about a month and that the testimony also was that Dr. Collins was willing to perform more nerve blocks. So this was actually about a month before the hearing. That Collins was loathe to perform? No, that he was planning to perform. So every month he would go to Dr. Collins for a nerve block? I believe that was the indication from the testimony that this was basically about a month before the hearing, and that was the most recent evidence in time to the hearing itself. And ALJ cited that in her opinion. This is, I believe it's on page 18 or 19 of the opinion. Dr. Collins' treatment notes are at 496 to 502 of the medical record. Again, Allauer had reported that the injections after gave, he told the doctor at least, that the injections eliminated his daily pressure headaches and Dr. Collins' notes at 485 of the record concluded that the blocks and injections worked well in controlling his headaches, which was the main symptom that he was alleging at the time. I don't see the Administrative Law Judge's discussion of Collins. I believe it is on page 19 of the administrative record. Could you give us, we don't have that in front of us, could you give us page which of 12? Page 8 of 12. The third and fourth complete paragraph, she's referring to Dr. Hedrick and Dr. Collins. Dr. Collins had... But he doesn't say anything about Dr. Collins. The claimant began saying Dr. Hedrick, a pain management specialist... No, it doesn't say what Collins found. It indicates in the penultimate paragraph he reported excellent improvement, oh sorry, that's the chiropractic matter. But he refers to those treatment notes and also I believe the ALJ reports elsewhere in her opinion that he reported relief from the medications that he received and relief from... Now Dr. Ghadiraju, what is he? Dr. Ghadiraju is a consultative examiner who performed an exam... What do you mean a consultative examiner? He was an examiner that the Social Security Administration referred Mr. Alara to for a physical examination in March of 2011. And so what is he? Is he a neurologist? I do not believe, actually I do not recall what his specialty. I do not recall whether he was a neurologist or a specialist in internal medicine. He performed a, basically a series of a mental status exam, a physical exam, a neurological exam, musculoskeletal... Now he says, now Ghadiraju said the claimant was able to sit for just 30 minutes and stand for just 30 minutes, well, then he says, then she says, I guess, a little weight is given to these limitations. So the Administrative Law Judge is rejecting his opinion. In part. Rejecting only that part. And in fact, I believe that is not exactly what Dr. Ghadiraju's opinion said. He performed a six minute walking... Well, this is what the Administrative Law Judge is saying. Yes, what she said is there is no basis in the examination reports or elsewhere for a limitation on sitting for only 30 minutes or standing for only 30 minutes. But she found that because he performed muscle testing, range of motion testing, lifting and so on, that there was support and she accepted his limitations on a restriction to light work and limitations on overhead reaching. Now, he seems to, at least he says he does, has these periods in which he kind of blanks out for several minutes? His testimony was that he had experienced them ever since the injury. He first reported them to Dr. Collins 18 months after the injury. So did the Administrative Law Judge say she didn't believe him? Or did she not mention it at all? She mentioned that his allegation that he had these spells, but what Dr. Collins did is say perhaps these are atypical seizures. I'll order an EEG. The EEG came up negative. And the ALJ specifically noted that that May 2012 EEG showed no evidence of seizure activity. It was normal. So she thinks he's completely recovered. The evidence that was submitted to her indicated from the neurologist Dr. Kochman and Dr. Bonas that the nerve blocks were working well in... Wouldn't it have made sense for her to have him examined by a neurologist at the time of the hearing? The ALJs have, at the time of the hearing, they can order some examination. I believe in fact at the end of the hearing the ALJ said she would try to see if she could get some sort of testing, but wasn't sure if that would be possible. There's no further mention of it. So I believe that's the very end of the transcript of the oral hearing. There's no question that he had a very serious injury. The question is whether he's recovered. What the ALJ noted was that the statements by Dr. Kochman, which by the way were simply an opinion that he could not work, which as the ALJ noted is an opinion that he is disabled, which is entitled to no special significance, can never be given controlling weight. And his opinions were time limited. The first one in September said, I don't want him working for a couple months, which the ALJ I believe accepted. In November he said, I'm putting it off until December because I wanted to have... March. No, in November he said, I'm putting it off until December because I want him to have neuropsychological testing. In December he said, well he still hasn't had the psychological testing. I'm saying no work until March. He ceased to be a patient of Dr. Kochman after, I believe it was January 2011. And the reports from... He saw a neuropsychologist once who found that there were some borderline... So the hearing was when? The hearing was in May of 2012. The ALJ... So this is about 18 months after his last seen contact? And he sought and received no treatment for almost a year from March 2011. Well wouldn't it be sensible to have him examined at the time of the hearing? See if he's all better? For one thing, first of all, there was the evidence from May 2012, which was less than a month before the hearing. When he returned to a neurologist... We don't know what that evidence is since she doesn't say what Collins found. She cites specifically to the... She mentions the fact that he ceased... It's such a clumsy way to deal with this. Look, what about these jobs? What is a retail marker? A retail marker is someone who attaches price tags to items for sale. You most often see them in the grocery store. They have a little gun that go around and attach price tags to... And there are 300,000 retail marker jobs. That is what the vocational expert tested. What did he base that number on? He based his number on his... I believe it was personal experience and... What do you mean personal experience? How does personal experience tell you there are 300,000 retail marker jobs? I do not know the specific answer to that question. He said that his testimony... There's increasing indication in the literature suggesting these numbers are made up out of whole cloth. They were not challenged at the hearing. Because they had no statistics. They were not challenged at the hearing. The basis of the vocational expert statements were never challenged at the hearing. The case law is fairly clear that if it's unchallenged, the ALJ is entitled to rely on it, which the ALJ appropriately did. What's an addresser? I've never seen that before. An addresser is someone who writes addresses not with machine, but by hand or by typewriter. There are 200,000 people in the United States who are writing addresses by hands? It is, comparatively speaking, given the size of the country, a rare job. That's ridiculous. It may be ridiculous, but the point is that that is the information that we have to rely on. The ALJs are bound by the regulations until they are rescinded or declared an abuse of discretion. No court has ever done so. It's a bad joke. Perhaps, but that is... Why don't you ask them where they get their numbers sometimes? Pardon? Before you argue your next case. I have no contact or way to contact a vocational expert. Really? You're not allowed to talk to a vocational expert? Generally not. Really? We are kept... The way that it generally works is the attorneys from the Office of General Counsel are kept apart from the administrative appeals process. I don't know if we could... Alright, I learned something. There is, however, a handbook which I believe is publicly available called How to Become a Vocational Expert that you may refer to if you wish, Your Honor. Sounds like a deal. Okay, well thank you very much, Miss Benz. So, Mr. Forbes, do you have anything further? Uh, two points. The ALJ misread Dr. Koschman's testimony. I don't believe Dr. Koschman said he was disabled. I think Dr. Koschman phrased it in terms of work. And there is a spectrum of no work function to multiple work functions and sometimes a person is at this end of the spectrum, no work functions, and I would think that the most likely person at this end of the spectrum is either dead or had tissue scooped out of their brain. So this is not a judgment of an ultimate issue. This is a statement of work function. The ALJ did not say it was a statement of ultimate issue, so to raise it would be in violation of Chenery. And that's all I have, Your Honor. Okay, well thank you very much to both counsel.